IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION
*Jury*

| | | |
|---|---|---|
| CHRISTINE REULE, HARRIET NICHOLSON, REBECCA FOSTER, JIMMY LEE MENIFEE, TONY LAMAR VANN, and the HONORABLE MADELEINE CONNOR, <br> Plaintiffs, <br> v. <br><br> The HONORABLE JACK SKEEN, JR., in his official capacity as Local Administrative Judge of Smith County, Texas, and on behalf of the class of all local administrative judges in Texas similarly situated; PENNY CLARKSTON, in her official capacity as District Clerk of Smith County, Texas, and on behalf of the class of all clerks of court in Texas similarly situated; and MEGAN LAVOIE, Administrative Director of the Office of Court Administration of Texas, <br> Defendants. | § § § § § § § § § § § § § § § § § § § § | Civil Action No.   22-367 <br><br> **Demand for Jury Trial filed separately** |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

John W. Vinson
State Bar No. 20590010
John W. Vinson, PLLC
PO Box 301678
Austin, TX  78703
Tel: (512) 926-7380
Email: johnvinsonatty@yahoo.com

Mary Louise Serafine (Lead Attorney)
State Bar No. 24048301
Mary Louise Serafine, Attorney &
    Counselor at Law
3571 Far West Blvd., #3669, Austin, TX 78731
Tel: (512) 220-5452
Email: serafine@mlserafine.com

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PARTIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DEFENDANTS ENFORCE CHAPTER 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

DEFENDANT CLASS ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CHAPTER 11 IS UNCONSTITUTIONAL
        AS WRITTEN AND AS APPLIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A.  Chapter 11 permanently revokes a first amendment right  . . . . . . . . . . . . . . . . . . . . . 6

B.  Chapter 11 is arbitrary, overbroad, and vague. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.  Chapter 11 thwarts due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.  Chapter 11 suspends the rules of evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.  Chapter 11 hobbles appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.  Denial of permission is itself non-appealable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2. The option of mandamus is a ruse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

F.  Chapter 11 rejects the narrow tailoring and appeal
        mandated by federal doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CHAPTER 11 IS UNCONSTITUTIONAL AS
        APPLIED TO PLAINTIFFS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Plaintiff Christine Reule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Plaintiff Harriet Nicholson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Plaintiff Rebecca (Alexander) Foster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Plaintiff Jimmy Lee Menifee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Plaintiff Tony Lamar Vann . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Plaintiff Judge Madeleine Connor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

All Plaintiffs suffer continuous, ongoing, irreparable harm,
       without remedy at law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Count I.        Prior Restraint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Count II.       Overbreadth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Count III.      Denial of Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Count IV.      Void for Vagueness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Count V.       Failure to Pass Any Level of Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Count VI.      Arbitrary and Capricious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Count VII.     Impairment of Liberty and Property Interests . . . . . . . . . . . . . . . . . . . . . . . . 27

Count VIII.   Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ATTACHED EXHIBIT 1:
CHAPTER 11, TEXAS CIVIL PRACTICE & REMEDIES CODE

INDEX OF AUTHORITIES

***Cases***

*Baum v. Blue Moon Ventures, LLC*,
    513 F.3d 181 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Callaway v. Martin*, No. 02-16-00181-CV,
    (Tex. App.—Fort Worth (May 25, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Combs v. Tex. Civil Rights Project*,
    410 S.W.3d 529 (Tex. App.—Austin 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*De Long v. Hennessey*,
    912 F.2d 1144 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Farguson v. MBank Houston, N.A.*,
    808 F.2d 358 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Goode*,
    821 F.3d 553 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Martin-Trigona*,
    737 F.2d 1254 (2nd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lee v. Gst Transp. System*,
    334 S.W.3d 16 (Tex. App.—Dallas 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McCann v. Mondragon*, No. 13-21-00186-CV
    (Tex. App.—Corpus Christi-Edinburgh Sept. 16, 2021) . . . . . . . . . . . . . . . . . . . . . 9

*McCray v. Glass*, No. 03-22-00162-CV
    (Tex. App.—Austin May 20, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Metzger v. Sebek*,
    892 S.W.2d 20, 49 (Tex. App.—Houston [1st Dist.] 1994) . . . . . . . . . . . . . . . . . . . 20

*Ringgold-Lockhart v. County of Los Angeles*,
    761 F.3d 1057 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 26

*Taylor v. Charter Medical Corp.,*
    162 F.3d 827 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Thomas v. Culpepper,*
    No. 4:18-CV-814 (E.D. Tex. Sept. 20, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

28 U.S.C. § 124(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1343(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1391(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Chapter 11, Texas Civil Practice & Remedies Code . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other authority**

Kevin Bliss, "Former Seventh Circuit Judge Posner Founds
    Short-Lived Project to Help Pro Se Litigants,"
    *Prison Legal News*, Jan. 9, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Patricia Manson, "Posner says friction on 7th Circuit bench
    led to his retirement," *Chicago Law Bulletin*, Sept. 6, 2017 . . . . . . . . . . . . . . . . . . . . 16

**Court records**

Hearing of Jan. 4, 2022, certified transcript,
    Cause No. 21-12504, in the 162nd Judicial District Court,
    Dallas County, Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Video of above hearing at
    https://www.youtube.com/watch?v=98v_z-OVEvQ&t=865s
    accessed 7/10/2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Order of May 24, 2011, Cause No. 2006-1531-DR in the
    307th Judicial District Court, Gregg County, Texas . . . . . . . . . . . . . . . . . . . . . . . . . 15

Order of Dec. 13, 2018, Cause No. DC-18-05278, in the
    191st Judicial District Court, Dallas County, Texas. . . . . . . . . . . . . . . . . . . . . . . . . . 9

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Christine Reule, Harriet Nicholson, Rebecca Foster, Jimmy Lee Menifee, Tony Lamar Vann, and the Honorable Madeleine Connor, seeking to vindicate their civil rights, allege that Chapter 11 (Chapter 11) of the Texas Civil Practice & Remedies Code (CPRC)—a law titled "Vexatious Litigants"—violates the Constitution, offendiYOUng the First and Fourteenth Amendments.  Plaintiffs sue under the Civil Rights Act of 1871, codified at 42 U.S.C. §1983.  Plaintiffs ask the Court to declare Chapter 11 unconstitutional, on its face and as applied, in particular CPRC §§11.001(2), 11.052, 11.053, 11.054, 11.055, 11.056, 11.101, 11.102, 11.103, and 11.104.  Plaintiffs also seek preliminary and permanent injunctions against enforcement.   Chapter 11 is attached as Exhibit 1.

## INTRODUCTION

1. If the Texas legislature had tried to create a procedure for blocking hundreds of citizens' access to the courts—and to streamline it by doing away with due process and the laws of evidence—it could not have done better than the Texas "Vexatious Litigants" law.

2. For citizens designated "vexatious," the law slams shut the courthouse doors *across the entire state, for the rest of the litigant's life*.[1]  The purpose is to identify citizens who file vexatious suits and stop them from filing prospectively, i.e., before they file such suits.

3. Astonishingly, however, the law massively over-designates, permanently depriving the rights of citizens who *have never been found to file a single "vexatious" or "frivolous" suit*.  Once designated "vexatious," the citizen must ask "permission" to file a suit, but the law rigs the procedure in favor of denying it.

---

[1]  There is only a minor exception for orders by constitutional county courts.

4.    Given how dire the punishment is, one expects Chapter 11's procedures to be consistent with constitutional rights.  Instead, the law is unconstitutionally overbroad, is riddled with vague terms, and facilitates arbitrary, capricious, and undisciplined application of the law to the facts.

5.    And the accused citizen is hampered in defending himself, right at the start of the proceeding, before he is even found "vexatious."

6.    Chapter 11 also suspends the rules of evidence and thwarts due process.

7.    In contrast to virtually  all other Texas statutes, Chapter 11 specifically limits appeal.

8.    Chapter 11 has desecrated the constitutional rights of some 360 Texas citizens thus far.

**JURISDICTION AND VENUE**

9.    This Court has jurisdiction under 28 U.S.C. §§1331 and 1343(a).

10.    The relevant events concerning the first-named plaintiff, Christine Reule, took place in the 241st District Court of Smith County, Texas.  On information and belief, Defendants Skeen and Clarkston, and all members of defendant classes, reside in Texas.  Named Defendants maintain offices in Smith County.

11.    Venue is proper in the Tyler Division of the Eastern District of Texas under 28 U.S.C. §1391(b)(1) and 28 U.S.C. §124(c)(1).

**PARTIES**

12.    **Plaintiff Christine Reule** resides in Smith County, Texas.  On May 21, 2019, in Case No. 18-1871-C in the 241st Civil District Court of Smith County, Reule was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Reule's rights.

-2-

13.   **Plaintiff Harriet Nicholson** resides in Tarrant County, Texas.  On January 5, 2022, in Cause No. DC-21-12504 in the 162nd Judicial District Court of Dallas County, she was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Nicholson's rights.

14.   **Plaintiff Rebecca (Alexander) Foster** resides in Gregg County, Texas.  On May 24, 2011, in Case No. 2006-1531-DR in the 307th Judicial District Court of Gregg County, she was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Foster's rights.

15.   **Plaintiff Jimmy Lee Menifee** resides in Dallas County, Texas.  On April 12, 2021, in Cause No. CC-20-04820-C in County Court No. 3 of Dallas County, he was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Menifee's rights.

16.   **Plaintiff Tony Lamar Vann** resides in Dallas County, Texas.  On September 17, 2021, in Cause No. DC-21-08738, in the 162nd Judicial District Court of Dallas County, he was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Vann's rights.

17.   **Plaintiff the Honorable Madeleine Connor** resides in Travis County, Texas.  On March 8, 2019 (before she took the bench), in Cause No. D-1-GN-18-005130 in the 201st Civil District Court, of Travis County, Connor was declared a "vexatious litigant" under Chapter 11.  The declaration remains in effect and, every day, it continues to violate Connor's rights.

18.    **Defendant the Honorable Jack Skeen, Jr.** is the Local Administrative Judge (LAJ) of Smith County, Texas.  As Chapter 11 sets out, Judge Skeen enforces Chapter 11 by granting or denying permission for a "vexatious litigant" to file a *pro se* suit or appeal. Clerks of court at the trial and appellate levels will reject such a litigant's attempted filings, unless the LAJ grants permission.  If Judge Skeen and other LAJs did not perform this role, Chapter 11's punishment could not be carried out.

19.    Judge Skeen is not sued in his *judicial* capacity, that is, in connection with any particular decision to grant or deny permission.  Instead, he is sued in his official and administrative capacities in the performance of the ministerial task of deciding whether to permit a "vexatious litigant's" *pro se* filing.  He is also sued as a representative of a putative class of Texas LAJs or others with similar duties.

20.    Judge Skeen may be served at the Smith County Courthouse, 100 N. Broadway, Room 220, Tyler, TX 75702 (241st District Court), Telephone 903-590-1643.

21.    **Defendant Penny Clarkston** is the District Clerk for Smith County, Texas.  In that role she accepts civil cases for filing and issues citations for service of process.  Her role in enforcing and executing Chapter 11 is set forth in the statute.

22.    Ms. Clarkston uses information from the Office of Court Administration to learn who has been designated a "vexatious litigant."  When a "vexatious litigant" submits a *pro se* document for filing, she rejects it, unless permitted by the LAJ.  If Defendant Clarkston did not perform this duty, the statute would be of no effect.  Ms. Clarkston is sued in her official capacity and as a representative of a putative class of all court clerks in Texas.

23.    Clerk Clarkston may be served at the Smith County Courthouse, 100 N. Broadway,

Room 204, Tyler, TX  75702. Telephone 903-590-1675.

24.   **Defendant Megan LaVoie** is the Administrative Director of the Office of Court
Administration (OCA) for Texas.  Her position was created by statute.  Ms. LaVoie was
appointed by the Texas Supreme Court and serves under the direction and supervision of
the Chief Justice and the Court.  Ms. LaVoie is sued in her official capacity.

25.   Ms. LaVoie enforces and executes Chapter 11 by creating, updating, and disseminating
the list of "vexatious litigants."  CPRC §11.104.  If Ms. LaVoie did not create and
update the list, and make the list available to the public on OCA's website, including to
clerks, judges, and potential defendants, Chapter 11 would be of no effect.

26.   Defendant LaVoie may be served at the Office of Court Administration, Texas Capitol,
205 W. 14th Street, Austin, TX 78701.  Telephone 512-463-1625.

## DEFENDANTS ENFORCE CHAPTER 11

27.   The first step in blocking "vexatious litigants" from the courts is for the clerk to send the
designating order to the Office of Court Administration (OCA).  CPRC §11.104.

28.   The OCA adds the name to its "vexatious litigants" list published on its website.[2]

29.   All clerks of court across the state must reject new, *pro se* "claims" by persons on the
list, unless the litigant has obtained permission from the LAJ.  CPRC §§11.102, 11.103.

## DEFENDANT CLASS ALLEGATIONS

30.   Each county in Texas has at least one clerk of court.  Each has the same duties under
Chapter 11, which specifies how they must enforce Chapter 11.  CPRC §§11.103,
11.1035, and 11.104.  When a "vexatious litigant" submits a *pro se* paper for filing, the

---

[2]  https://www.txcourts.gov/judicial-data/vexatious-litigants/  Accessed 9-15-2022.

clerk must reject it, unless the Local Administrative Judge has given permission for it.

31.    Each county also has at least one LAJ.  Each has the same enforcement duties, with Chapter 11 specifying that they must stand ready to decide requests for permission to file by "vexatious litigants."  CPRC §§11.101 and 11.102.

32.    Plaintiffs ask the Court to certify two defendant classes under Federal Rule of Civil Procedure 23(b)(1)(A), or under Rule 23(b)(2).

    a.    One proposed class consists of all non-federal clerks of court in Texas, to be represented by Defendant Clarkston.

    b.    The other proposed class consists of  all LAJ's in Texas state courts, to be represented by Defendant Judge Skeen.

33.    In both classes, the members are so numerous—several hundred clerks and at least 254 LAJ's—that joinder of them is impracticable.

34.    There are questions of law and fact common to each class.  Members of each class carry out their respective Chapter 11 duties.  Not certifying the classes would risk inconsistent judgments if each class member had to be sued separately.

35.    Each representative will marshal defenses typical of his class and will fairly and adequately protect the interests of it.

### CHAPTER 11 IS UNCONSTITUTIONAL AS WRITTEN AND AS APPLIED

**A.  *Chapter 11 permanently revokes a first amendment right.***

36.    The so-called "vexatious litigant" is stripped of his *pro se* right to petition, *in every Texas court for any reason, against any defendant, permanently*.[3]  CPRC §11.101(c).

---

[3] There is only a minor exception for orders by constitutional county courts.

-6-

37.     Appeal is restricted, and no other mechanism exists to un-do the designation.  *See infra.*

38.     That the litigant might get "permission" to file a suit does not correct the deprivation. Certainly if one had to get permission before speaking, no one would consider it consistent with the first amendment.  In any event, the standard that the litigant must meet to obtain permission is higher than in a normal filing.  *See infra.*

**B.  Chapter 11 is arbitrary, overbroad, and vague.**

39.     Although Chapter 11's purpose is to stop the filing of vexatious suits, Chapter 11 ***does not require the court to find*** that the litigant has ever filed even a single vexatious suit.

40.     Instead, Chapter 11 requires only that the judge meet two criteria:

        a.     Prong One: that "there is not a reasonable probability that the plaintiff will prevail" in the ***litigation*** at hand; and

        b.     Prong Two: that the plaintiff, in the previous seven years, carried out at least five *pro se* ***"litigations"*** that were ***"finally determined adversely"*** to him.[4]

CPRC §§11.054(1)(A).  The vague words in bold allow arbitrary application of Chapter 11.

41.     And neither prong identifies a vexatious litigant.[5]  Both are unconstitutionally vague as well as contrary to federal doctrine where, to designate a litigant vexatious, the court

---

   [4]  Chapter 11 permits alternative methods of meeting Prong Two, but anecdotal evidence suggests the definition above is the most frequently used.  In any event most of the alternatives also do not all require finding that plaintiff made vexatious filings.  CPRC §11.054.

   [5]  A suit can be "unsuccessful but reasonably based."  *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002).  Even losing all "causes of action does not necessarily mean that [plaintiff's] claims were groundless."  *Callaway v. Martin*, No. 02-16-00181-CV (Tex. App.—Fort Worth, May 25, 2017) (collecting cases).

must "make substantive findings of frivolousness or harassment." [6]  Without the
necessity of making that finding, Chapter 11 is unconstitutionally overbroad because it
sweeps into its ambit litigants who have never been found to file a vexatious lawsuit.

### C. Chapter 11 thwarts due process.

42.    The Chapter 11 proceeding begins with defendant or the judge filing a motion that
accuses plaintiff of being "vexatious."  CPRC §11.051.  Instantly, on mere filing of the
motion, the case is "stayed"; plaintiff is barred from filing anything.  CPRC §11.052.

43.    He cannot move to compel witnesses to the hearing, seek discovery or anti-SLAPP
protection if it were warranted, or take other steps that would be in his interest.  This is
so when plaintiff is merely accused, not yet found guilty of being a "vexatious litigant."

44.    Yet defendant reaps benefits merely by filing the motion:

    a.      He is relieved of having to plead to the suit; CPRC §§11.052, 11.053.

    b.      If his motion is granted, plaintiff must furnish security to cover defendant's
                 expected attorney's fees and costs; CPRC §§11.051, 11.055.

    c.      If plaintiff fails to furnish security, defendant wins dismissal.  CPRC §11.056.

    d.      Defendant can also move for a *prefiling order* to prevent plaintiff from filing
                 other lawsuits (without permission), anywhere in the state.  CPRC §11.101.

45.    At the same time, the dollar amount of plaintiff's security is unlimited—in one case,

---

[6] *Ringgold- Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062  (9th Cir. 2014);
*Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) (prefiling order was
justified where plaintiff filed same "frivolous and irrational" complaint repeatedly against the
same defendant).

$422,000.00.[7]  There is no consideration of plaintiff's ability to pay and no interlocutory appeal of the amount of security.

### D.  Chapter 11 suspends the rules of evidence.

46.     Chapter 11 provides only that the judge "may consider any evidence material...to the motion."  But there is no requirement to take offers of evidence, hear objections, and rule on admission.  CPRC §11.053.

47.     Witnesses may testify "by affidavit," thereby preventing a cross-examination.  *Id*.

48.     In a Chapter 11 proceeding, the judge often examines no documents, admits or rejects no evidence, places no documents in the court file, and files no findings of fact or conclusions of law.  With the standard of review being only abuse of discretion, successful appeal is nearly impossible.

### E.  Chapter 11 hobbles appeal.

49.     Except by permission, many appeals of "vexatious litigant" orders are not even filed.[8]

#### 1.  Denial of permission is itself non-appealable.

50.     The LAJ may take any length of time to decide permission, with or without a hearing, and without giving reasons.  Defendant may weigh in on the question.  CPRC §11.102.

51.     The LAJ must refuse permission unless plaintiff's proposed filing affirmatively "has

---

[7]  Order of Dec. 13, 2018 in Cause No. DC-18-05278, 191st Judicial District Court of Dallas County, Texas.

[8]  Clerks of court "may not file a litigation, original proceeding, appeal, or other claim presented, *pro se*, by a vexatious litigant...unless the litigant obtains [permission] from the appropriate [LAJ]."  CPRC §11.103(a).  *McCann v. Mondragon*, No. 13-21-00186-CV (Tex. App.—Corpus Christi-Edinburgh Sept. 16, 2021) (appeal dismissed if filed... "without permission of a local administrative judge"); *McCray v. Glass*, No. 03-22-00162-CV (Tex. App.—Austin May 20, 2022) (same).

merit." CPRC §11.102.  This is a higher standard than is required in the ordinary case.

52.    And a denial by the LAJ "is not grounds for appeal, except that the litigant may apply

for a writ of mandamus with the court of appeals...."  CPRC §11.102(f).

### 2.  The option of mandamus is a ruse.

53.    While mandamus is technically available, it too is "new litigation."  Thus, it requires the

LAJ's permission—that is, permission from the same judge who just denied the filing.

54.    Few judges will see merit in allowing a plaintiff to urge that the LAJ abused discretion.

55.    Even if plaintiff does reach the court of appeals, denial of mandamus there "is not

grounds for appeal to the supreme court...."  CPRC §11.102.(f).

### F.  Chapter 11 rejects the narrow tailoring and appeal mandated by federal doctrine.

56.    Federal doctrine requires prefiling injunctions to be narrowly tailored.[9]  Such orders

usually bar plaintiff from re-litigating against the same defendants for the same relief.

57.    By contrast, a Texas prefiling order is vastly overbroad.  If "entered...by a district or

statutory county court [the order] applies to each court in this state."  CPRC §11.101(e).

58.    Federal doctrine permits a genuine appeal of the prefiling order and the possibility of

---

[9] *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986) (citing *Martin-Trigona,* affirming narrow injunction that bars only same claims against same defendants).

*See In re Martin-Trigona*, 737 F.2d 1254 (2nd Cir. 1984) (Winter, J.)  (limiting district court's injunction, although plaintiff had filed some 250 suits and papers across the nation).

*See also De Long v. Hennessey*, 912 F.2d 1144 (9th Cir. 1990) (setting detailed requirements for constitutionality of a pre-filing injunction); *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014) (same).

*See also Thomas v. Culpepper*, No. 4:18-CV-814 (E.D. Tex. Sept. 20, 2019) (Mazzant, J.) (without permission, pre-filing injunction bars only *pro se* suits on a particular overly-litigated home repair dispute).

removing it entirely, which is itself appealable.[10]  Chapter 11 has neither provision.

## CHAPTER 11 IS UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS

### *Plaintiff Christine Reule*

59.   Reule filed a suit *pro se* in Texas district court in Smith County, concerning enforcement

of deed restrictions, failure to disclose, and fraud.

60.   In that case, on May 21,2019, Reule was (1) declared a "vexatious litigant"; (2) warned

that her suit would be dismissed if she did not pay security of $7,500, which was beyond

her means; and (3) barred from filing "new litigation in this state," without first

obtaining permission from the LAJ.

61.   The last of these is Chapter 11's prefiling order.  CPRC §11.101(a).  Chapter 11 does not

prohibit expanding the prefiling order beyond merely *pro se* "litigations."  But in

Reule's case, the prefiling order apparently applies even when she has counsel.

62.   Reule was harmed by all the unconstitutional provisions of Chapter 11, including the

automatice stay and Prong Two's use of the plural, "litigations."  CPRC §11.054(1).

63.   For example, the Prong Two criterion applied to Reule was five  "litigations" "finally

determined adversely."  CPRC §11.054(1)(A).  These phrases being vague, Chapter 11

permitted counting the following as meeting Prong Two:

    a.   a mandamus petition that was denied, but not because of frivolousness;

    b.   an appeal dismissed because it became moot;

    c.   affirmance of a sanction against Reule, but not for frivolousness; the sanction

---

[10]  The designated litigant "may file a Rule 60(b)(5) motion to modify or dissolve the pre-filing injunction...[and that ruling] will be appealable."  *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 193 (5th Cir. 2008).

was allegedly only for "wasting time."  However, the appellate Chief

Justice—who would have vacated the sanction— dissented vociferously;

d.      a case dismissed without prejudice;

e.      a dismissal resulting from settlement.

64.     None of these indicates frivolousness or vexatiousness.

65.     Reule was also harmed by the automatic stay, which barred her from (1) getting a

default judgment against a non-answering defendant; and (2) seeking contempt for a

defendant's violation of the TRO Reule had already won.  CPRC §11.052.

66.     Reule now needs to file a new lawsuit.  In October 2020 Reule's neighbor removed one

of Reule's puppies from Reule's yard.  A video shows that the neighbor repeatedly shot

at the puppy as it hyperventilated and ran here and there in terror.  Following this

cruelty, the neighbor finally shot and killed the puppy.  Later the neighbor showed Reule

the video and taunted her, saying that, as a vexatious litigant, Reule could not sue him.

67.     Reule's rights to petition and to access the courts *pro se*, or even under counsel, are

severely and permanently impaired.  Without the relief requested here, if Reule needed

to bring a lawsuit, original proceeding, appeal, or other claim, she would be barred from

doing so—even if she somehow shouldered the expense of retaining counsel—unless

she obtained the LAJ's permission.

68.     No government entity was a party to Reule's case.

***Plaintiff Harriet Nicholson***

69.      Nicholson was harmed by all the unconstitutional provisions of Chapter 11, especially

by the statute's disregard of the rules of evidence.  Her case is a microcosm of how

Chapter 11 eliminates the need for evidence.

70.    Defendant's motion to declare Ms. Nicholson vexatious, in substance, consisted of

    a.     a list of 13 papers allegedly filed *pro se* by Ms. Nicholson;[11] and

    b.     a request, ***only in a footnote***, that the court "take judicial notice of all dockets and pleadings listed throughout this Motion...."[12]

71.    Yet, incredibly, the moving defendant presented no "dockets and pleadings" for the court's examination—in either the motion or at the hearing.  Instead, defendant asked the court "to take judicial notice" of a raft of court documents that were alleged to exist, but that the court could not see, much less analyze under the statute.

72.    Next, defendant asked the judge to conclude that the same invisible "dockets and pleadings" met both of the Prong Two tests in Subsections 11.054(1) and (2).

73.    At the hearing to designate Nicholson a "vexatious litigant," defense counsel offered no documents and presented no testimony.  Nothing showed that any case was "finally determined," much less adversely to Nicholson, or constituted a "litigation" and "relitigation" under the statute.  Instead, defense counsel acted as her own unsworn witness, telling the court:

    a.     "These cases have all been denied or ruled adversely to Plaintiff."[13]

    b.     "So the above-referenced examples that I gave you, the 13... established

---

[11]  *Defense motion* filed Nov. 29, 2021, Dallas County Cause No. DC-21-12504 at 6-8.

[12]  *Id.* at note 1.

[13]   Hearing, Jan. 4, 2022, Cause No. 21-12504, transcript at 10.  Video of the hearing is posted on judge's Youtube page**:** https://www.youtube.com/watch?v=98v_z-OVEvQ&t=865s accessed 7/10/2022.

Plaintiff's repeated attempts to relitigate final determinations against her."[14]

74.   Chapter 11 permitted these conclusory statements to act as "evidence," which would

never be permitted in an ordinary case.

75.   As is usual, the trial court's order declaring Nicholson a "vexatious litigant" also warned

her that her case would be dismissed if she did not deposit security—here, $1500.

76.   Although Nicholson deposited the security to allow the case to go forward, defendants

filed motions for summary judgment.  These were granted and final judgment entered.

77.   Since then, Nicholson's rights to petition and to access the courts *pro se* have been

severely and permanently impaired.  Without the relief requested here, if Ms. Nicholson

needed to bring a lawsuit, original proceeding, appeal, or other claim, she would be

barred from doing so, unless she somehow shouldered the expense of retaining counsel

or got permission from the LAJ.

78.   No government entity was a party to Nicholson's case.

### Plaintiff Rebecca (Alexander) Foster

79.   Foster was harmed by all the unconstitutional provisions of Chapter 11.  She was

declared a vexatious litigant in a child custody matter—which remains the only case she

ever brought in any court.

80.   Chapter 11 is supposed to prevent litigants who file multiple, frivolous suits from filing

more of them.  Declaring Foster vexatious in the only suit she ever filed is a lesson in

how Chapter 11 is pliable enough to ensnare virtually any litigant.

81.   Foster was harmed by the vague terms "litigation," "finally determined adversely,"

---

[14] *Id.* at 10-11.

"relitigates," and "attempts to relitigate."  CPRC §11.054(2).

82.    Most Texas courts would interpret

    a.    "litigation" to mean *a lawsuit*;

    b.    "finally determined" to mean *after exhaustion of appeals*; and

    c.    "relitigates" to mean *filing the same claim against the same defendant.*

83.    But these terms are vague and malleable in Chapter 11 because

    a.    "litigation" can also mean *a motion;*

    b.    "finally determined" can mean a trial court order not-yet-appealed; and

    c.    "relitigates" can mean a challenge such as a motion to reconsider.

84.    Thus, to meet Prong Two[15] of the vexatiousness determination, Chapter 11 permitted the order declaring Foster vexatious to find that,[16] Rebecca Alexander[17] "...has attempted to relitigate issues which have been concluded...by this Court."

85.    The case in which Foster was declared vexatious involved Foster's custody and visitation rights as the mother of a child not yet in elementary school.

86.    For more than a decade Foster has been deprived of a normal mother-daughter relationship, just as the child was deprived of the same.  At a minimum, as the child

[15]  One of the tests for meeting Prong Two is Section 11.054(2), which reads, generally:

    after *a litigation* has been *finally determined against the plaintiff*, [he] repeatedly *relitigates or attempts to relitigate*....[the same issues against the same defendant].

CPRC §11.054(2) (emphases added).

[16]  *See* Order filed in Cause No. 2006-1531-DR on May 24, 2011, in 307th Judicial District Court of Gregg County, Texas.

[17]  At the time of the litigation, Rebecca's last name was Alexander.  Today it is Foster.

grew up, changes in custody and visitation might have been appropriate matters for a
court to consider.  But these were closed off by the use of Chapter 11 to designate her a
"vexatious litigant."

87.     Chapter 11 has no provision for un-doing the designation, regardless of how much time
passes.  Foster's child is now in her mid-teens. Without the relief requested here, if
Foster needed to bring a lawsuit, original proceeding, appeal, or other proceeding, she
would be barred from doing so, unless she somehow shouldered the expense of retaining
counsel or got the LAJ's permission.

88.     No government entity was a party to Foster's case.

***Plaintiff Jimmy Lee Menifee***

89.     Esteemed jurist Richard Posner resigned from the Seventh Circuit bench on one-day's
notice because, he said, "I was not getting along with the other judges because I
was...very concerned about how the court treats *pro se* litigants."[18]  He criticized judges
who did not appear neutral to *pro se* litigants (e.g., when they cut and paste the other
side's brief into an opinion) and complained that the "maze of rules" was nearly
impossible for pro se's to navigate.[19]

90.     Plaintiff Menifee epitomizes what Posner was talking about.  Menifee attempted to
appeal his "vexatious litigant" designation by filing one-and-a-half hand-written pages.

---

[18]  Patricia Manson, "Posner says friction on 7th Circuit bench led to his retirement,"
*Chicago Law Bulletin*, Sept. 6, 2017.

[19]  Kevin Bliss, Former Seventh Circuit Judge Posner Founds Short-Lived Project to Help
Pro Se Litigants, *Prison Legal News*, Jan. 9, 2020.  *See*
https://www.prisonlegalnews.org/news/2020/jan/9/former-seventh-circuit-judge-posner-founds-s
hort-lived-project-help-pro-se-litigants/ Accessed 9/12/2022.

91.   The court of appeals warned Menifee that he had failed to meet nearly all of the briefing rules.  So Menifee re-briefed in four-and-a-half hand-written pages.  The brief stated the titles of each required section of a brief.  After each title, Menifee stated in a sentence or two his opinion of why the court should find in his favor.

92.   The appellate court held that Menifee waived review by failing to meet briefing rules.

93.   Without the relief requested here, if Menifee needed to bring a lawsuit, original proceeding, appeal, or other proceeding, he would be barred from doing so, unless he somehow shouldered the expense of retaining counsel or got the LAJ's permission.

94.   No government entity was a party to Menifee's case.

***Plaintiff Tony Lamar Vann***

95.   Plaintiff Vann was harmed by each of Chapter 11's unconstitutional provisions, including that the court declaring him vexatious did not need to report specific findings.

96.   Instead, as with nearly all such orders, the order declaring Vann "vexatious" does no more than re-state Chapter 11's criteria, almost *verbatim* and, before each one, inserts the words "The Court finds that...."

97.   Thus, almost word-for-word quoting Section 11.054(1)(A), the order states:[20]

> The Court finds that Plaintiff has...in the seven (7) year period immediately preceding the filing of Defendants' Motion, commenced, prosecuted, or maintained, in propria persona, at least five litigations other than in small claims court that have been finally determined adversely to Plaintiff.

98.   Without the relief requested here, if Vann needed to bring a lawsuit, original proceeding, appeal, or other proceeding, he would be barred from doing so, unless he somehow

---

[20]  Order, Sept. 17, 2021, No. DC-21-08738, 162nd District Court of Dallas County, TX.

shouldered the expense, as an indigent, of retaining counsel or got the LAJ's permission.

***Plaintiff Judge Madeleine Connor***

99.   The Hon. Madeleine Connor has been the duly-elected presiding judge of the 353rd

Civil District Court of Travis County since January 1, 2021.  Prior to taking the bench,

she had an exemplary career as an attorney.[21]

100.  Connor was harmed by each of Chapter 11's unconstitutional provisions, especially by

the vague term *litigation* and its use in two phrases: First, *"not a reasonable probability*

*that the plaintiff will prevail in the litigation against the defendant."*  CPRC §11.054.

Second, *"a new litigation"* in the statute's prohibition in the prefiling order.  CPRC

§11.101(a).  Connor was also harmed by the automatic stay.  CPRC §11.052.

101.  During 2018, while she was counsel to the Veterans Commission, Connor discovered on

the internet a purported "review" of her work by anonymous reviewers.  They falsely

claimed to have been her clients.  Their review was false, negative, and damaging.

102.  Connor thought she knew who the culprits were but, in an abundance of caution, she

refrained from filing suit and instead filed a petition under Texas Rule of Civil

Procedure 202.  Under this rule, Connor could be permitted only to take depositions

before filing suit, to investigate whether she had a claim.  Rule 202 is not a type of

---

[21]   After law school Connor clerked at Texas' 14th Court of Appeals, and then for two years at the Court of Criminal Appeals.  Thereafter she was an Assistant Attorney General for eight years in the General Litigation Division of the AG's office.  Later she was in private practice and then served as Assistant General Counsel, then as General Counsel, to the Texas Veterans Commission.  She held that post until taking the bench.

lawsuit; it is discovery.[22]

103.  Chapter 11 allows a defendant to seek a vexatiousness order only "*[i]n a **litigation in this state.*" CPRC §11.051 (emphasis added).  But the word *litigation* is vague.  Thus the statute allowed the intended deponents to appear at the Rule 202 hearing and immediately move to declare Connor a vexatious litigant.  This suggests that any court proceeding could give rise to a "vexatious litigant" motion.

104.  Various events showed that the intended deponents had indeed authored the defamatory review against Connor.  She therefore filed suit directly against them and, with her Rule 202 petition becoming moot, properly dismissed it with prejudice.

105.  Prong One of the test for identifying a "vexatious litigant" is finding that "there is not a reasonable probability that the plaintiff will prevail in the ***litigation*** against the defendant."  CPRC §11.054.  With ***litigation*** vaguely including even a Rule 202 proceeding, the statute mandated that Connor, obviously, could not "prevail in the litigation against the defendant"—because she had dismissed the petition herself, for mootness.  Therefore, she met Prong One of the test to be declared a vexatious litigant.

106.  Connor's filing of the Rule 202 petition is arguably as far away from frivolous or vexatious conduct as one could get.

107.  But for the vague, expansiveness of the word *litigation*, Connor's conduct could not have met Prong One, and she could not have been declared vexatious.

---

[22]  A Rule 202 proceeding "is not a separate, independent lawsuit...."  *Lee v. Gst Transp. System*, 334 S.W.3d 16, 19 (Tex. App.—Dallas 2008).  It "asserts no substantive claim or cause of action upon which relief can be granted." *Combs v. Tex. Civil Rights Project*, 410 S.W.3d 529, 534 (Tex. App.—Austin 2013).

108.    Connor was also harmed by the automatic stay.  CPRC §11.052.  In the Rule 202
        proceeding, she drafted and filed an anti-SLAPP motion that would have provided
        protection against defendants' motion.  But then, because of the automatic stay, she had
        to withdraw from setting it for hearing.  That nullified it, and she lost the protection.[23]

109.    Connor was ultimately declared a "vexatious litigant."

110.    Under the prefiling order, Chapter 11 barred her from filing "a new litigation" *pro se*
        unless she had permission from the LAJ.  CPRC §11.101(a).

111.    Judge Connor recently filed documents for a name change.  A name change is not a
        lawsuit and has no defendants.  Nevertheless, with "new litigation" being vague, the
        clerk insisted on rejecting the filing.

112.    Chapter 11 severely and permanently impaired Judge Connor's rights to petition and to
        access the courts.  Without the relief requested here, if Judge Connor needed to bring a
        lawsuit, original proceeding, appeal, or even something as non-litigious as a name
        change, *pro se*, she would be barred from doing so, unless she shouldered the expense of
        retaining counsel or was granted permission by the LAJ.

113.    No government entity was a party to Connor's case.

***All Plaintiffs suffer continuous, ongoing, irreparable harm, without remedy at law.***

114.    Plaintiffs repeatedly suffer continuous, ongoing harm.

115.    Every day, in 254 Texas counties, clerks and local administrative judges stand ready to

---

[23]  Under Texas law, a motion filed, but not set for hearing is a nullity until it is set.
*Metzger v. Sebek*, 892 S.W.2d 20, 49 (Tex. App.—Houston [1 Dist.] 1994) ("Until the
defendants filed their notices of a hearing on the motions for sanctions, [the party] was entitled
to treat those motions as potential nullities") (citations omitted).

enforce Chapter 11 against 360 "vexatious litigants" plus those newly designated.

116.     In 2017, about 17 Texas citizens were declared "vexatious litigants," thereby impinging their first amendment rights.  In 2018, about 25 Texas citizens were so declared, plus another 25 the following year.  In 2020, perhaps under the effect of the pandemic, 19 Texas citizens were declared "vexatious litigants" and another 19 so declared in 2021. So far in 2022, eight Texas citizens have been declared "vexatious."

117.     In the roughly nineteen years between the statute's passage in 1997 through the end of 2016, at least 250 Texas citizens had been declared vexatious.  Then, in the five-and-a-half years since January, 2017 up to the present, more than another 100 have been added to the list of those whose attempted filings would be rejected.

118.     This shows that, across all members of defendant classes of clerks of court and LAJs, defendants continuously violate the first and fourteenth amendment rights of Texans.

119.     The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted).

120.     Plaintiffs here have been deprived of their first amendment rights of petition for months or years.  Without the relief requested here, Plaintiffs will continue to suffer irreparable harm for the rest of their lives.

121.     Except for the one "appeal" (which requires permission), there is no procedure by which a "vexatious litigant" can undo the designation, regardless of how much time passes.

**CLAIMS FOR RELIEF**

122.     All Plaintiffs allege that Chapter 11 is unconstitutional on its face and as applied to each

-21-

of them, as described in the following counts.

## Count I.  Prior Restraint

123.   The foregoing is incorporated herein by reference as though stated in full.

124.   Prior restraints on first amendment rights are disfavored, unless an activity poses a clear

and present danger or a serious and imminent threat to a protected, competing interest.

If the restraint is allowed, the government must demonstrate that the restraint is

narrowly tailored and provides the least restrictive means to achieve the government's

goal.  *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016) (cleaned up).

125.   Chapter 11 imposes a broad prior restraint on the right to petition, for life, without

providing protection against a clear and present danger or imminent threat.

126.   Chapter 11 is not narrowly tailored and is not the least restrictive means to achieve the

goal of reducing vexatious litigation.  Instead of restricting the "vexatious litigant's"

lawsuits on certain claims, or against certain defendants, or for certain time periods,

Chapter 11 prohibits all "litigations"against anyone, on any claim, for any purpose, for

the remainder of the litigant's life.  This is as broad a prior restrain as there could be.

127.   Without intervention from this Court, Plaintiffs are suffering and will continue to suffer

irreparable injury for which there is no adequate remedy at law.

## Count II.  Overbreadth

128.   The foregoing is incorporated herein by reference as though stated in full.

129.   Chapter 11 is unconstitutional on its face because it is overbroad; it substantially

infringes the rights of persons far beyond any plainly legitimate sweep it might have.

130.   The only potential exception to striking down an overbroad law is where a law

-22-

incorporates a limiting construction, or so narrows the impairment of the right that it removes the overbroad nature of the statute.  Chapter 11 fails to do this.

131.   Instead of stopping only those who burden the courts, Chapter 11, by its own language, sweeps into its ambit  litigants who have never filed a single vexatious lawsuit or paper.

132.   The punishment meted out by Chapter 11 is also overbroad.  It impairs all suits in Texas by "vexatious litigants" instead of impairing only those that plaintiff has shown he is willing to bring frivolously or vexatiously.

133.   Without intervention by the Court, Plaintiffs are suffering and will continue to suffer irreparable injury, for which there is no adequate remedy at law.

### Count III.  Denial of Due Process

134.   The foregoing is incorporated herein by reference as though stated in full.

135.   Chapter 11 denies due process at the initial stage—when determining whether the plaintiff is a "vexatious litigant"—and again after the designation, when the litigant must obtain  permission to file a suit.

136.   On the mere filing of defendant's motion, plaintiff is faced with a presumption of guilt, not a presumption of innocence.  Merely filing defendant's motion imposes a stay that blocks plaintiff from filing  papers he may need for his own defense, such as a motion to change venue, especially for local prejudice, or to disqualify counsel or the judge, or for protection under the anti-SLAPP statute.  This impairment of plaintiff's defense takes place on defendant's mere accusation, before plaintiff has been found "vexatious."

137.   And when a "vexatious litigant" attempts to get permission to file a suit, he has no right to a hearing and no right to appeal the outcome.  Chapter 11 does allow that mandamus

might be sought if permission is denied, but mandamus is a very high standard.  In any event the petition for writ would itself require permission from the LAJ who rejected the suit in the first place, and so permission to seek the writ is unlikely to be granted.

138.  Chapter 11 does not require a court to state in writing the reasons for declaring a plaintiff a "vexatious litigant."  The vast majority of orders declaring litigants "vexatious" do not contain written findings.  The undersigned are aware of only one.  At most, they recite conclusions that parrot the language of the statute.  As a result, even if the "vexatious litigant" retained counsel and took appeal, the absence of written findings would require appellant to defeat every possible ground supporting the order.  This burden is heavier than defeating only actual, written grounds for the order.

139.  Without intervention from the Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

### Count IV.  Void for Vagueness

140.  The foregoing is incorporated herein by reference as though stated in full.

141.  Chapter 11's words and phrases are vague and therefore fail to give the notice required by due process.

142.  That Chapter 11 ensnares innocent people is exacerbated by its use of "litigation" and "litigations" as *countable* nouns.  In American English, *litigation* is usually general and *uncountable*, like *beauty* or *knowledge*. But Chapter 11 uses the word as a *countable* noun, thereby causing confusion about whether the word refers to subparts of a suit.

143.  These terms, "litigation" and "litigations," are unconstitutionally vague.  They might refer to lawsuits where, for example, plaintiff won no relief on the merits, or they could

refer to losing a single claim while winning another.  *Litigations* could refer to proceedings unrelated to merits—such as discretionary appeals, mandamus petitions, Rule 202 proceedings, etc.  This makes it impossible for anyone to know what is and is not counted for Prong Two.[24]

144.   Also vague is the phrase "finally determined adversely."  CPRC §11.054(1)(A).   It might refer to losing on the merits, or to dismissals for non-merits reasons—e.g., suits that became moot, were settled, or were outside jurisdiction.  There are many reasons why a plaintiff might be unsuccessful under some theories, without being frivolous or vexatious on the merits.

145.   It is unclear whether the phrase "finally determined adversely" refers to a suit in plaintiff's past that he actually lost on the merits, or whether it includes suits that could not have reflected vexatiousness, such as missing disputable statutes of limitation, dismissals without prejudice, voluntary dismissals by plaintiff, or dismissals for want of prosecution or for lack of jurisdiction.

146.   Without intervention from this Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

### Count V.  Failure to Pass Any Level of Scrutiny

147.   The foregoing is incorporated herein by reference as though stated in full.

148.   The right to petition embodied in the First Amendment is a fundamental right.  Chapter 11 impairs that right, and must be analyzed under strict scrutiny.

---

[24]  Chapter 11's definition of "litigation" is "a civil action...in any state or federal court," CPRC §11.001(2), which makes the term no less vague.

149.  Under strict scrutiny, the government has the burden to prove that the law is narrowly tailored to further a compelling state interest.

150.  The government cannot meet either of these burdens.  The statute is not narrowly tailored because it does not prescribe that lesser sanctions should be tried first—such as payment of attorney's fees, early dismissal, use of the Texas anti-SLAPP law if appropriate, use of the Rule 91a procedure for dismissal and fee-shifting, plus stays of discovery, the civil malicious prosecution tort, and the "no-evidence" summary judgment motion.

151.  Texas has **twenty statutes** that provide for early dismissal and that punish filing frivolous or groundless papers, without eliminating litigants' first amendment rights. For example, the *Inmate Litigation Act* already allows courts to rule on many frivolous suits even before they are served.

152.  Chapter 11 also does not address a truly compelling state interest.  Vexatious suits cause inconvenience and expense, but they do not cause irreparable harm.

153.  Chapter 11 even fails to meet rational basis review, because many factors leading to the branding of a "vexatious litigant" are unrelated to whether a legal action is vexatious.

154.  Because it fails to pass any level of scrutiny, Chapter 11 is unconstitutional on its face.

155.  Chapter 11 is also unconstitutional as applied to Plaintiffs, for the same reasons.

156.  Without intervention from this Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

### Count VI. Arbitrary and Capricious

157.  The foregoing is incorporated herein by reference as though stated in full.

158.   Chapter 11 allows and encourages Texas court to designate a citizen "vexatious"

without the court itself making a finding of frivolousness, harassment, or vexatiousness.

Federal courts, by comparison, where they do issue prefiling orders, must "make

substantive findings of frivolousness or harassment." *Ringgold-Lockhart v. County of*

*Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014).

    a.   By contrast, a Texas court can adopt the vexatiousness finding of another "state

or federal court" in which "the plaintiff has previously been declared a vexatious

litigant" under the same or substantially similar facts.  CPRC §11.054(3).  *See*

*also* §11.054(1)(C).  Adopting the findings of other courts is contrary to

evidentiary standards because "courts generally cannot take notice of findings of

fact from other proceedings for the truth asserted therein because these are

disputable and usually are disputed."  *Taylor v. Charter Medical Corp.*, 162 F.3d

827, 830 (5th Cir. 1998).

    b.   Other subsections of Chapter 11 are also arbitrary and capricious because

plaintiff can be designated vexatious if only *five* of plaintiff's *pro se* cases were

lost, or not set for hearing or trial for two years.  CPRC §11.054(1)(A) and (B).

But Texas courts themselves hold that losing a case is no indication of

vexatiousness.  *Callaway v. Martin*, No. 02-16-00181-CV (Tex. App.—Fort

Worth (May 25, 2017)  (summary judgment against a party on every cause of

action does not "necessarily mean that his claims were groundless").

    c.   Likewise it is no indication of vexatiousness that a court dismisses a case

without prejudice or for want of prosecution.

      d.      Without intervention from the Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

## Count VII. Impairment of Liberty and Property Interests

159.    The foregoing is incorporated herein by reference as though stated in full.

160.    The Supreme Court has determined that the due process clause protects a person's reputation as a liberty interest.

161.    Chapter 11 requires or allows a person to be branded a "vexatious litigant," which harms his reputation.  Where one's reputation is especially important to one's livelihood, such as in a profession demanding a good reputation, the branding impinges his property interest.

162.    As applied to Plaintiffs, Chapter 11 has harmed their reputations by branding them "vexatious litigants."  This affects their livelihoods.

163.    Without intervention from the Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

## Count VIII.  Equal Protection

164.    The foregoing is incorporated herein by reference as though stated in full.

165.    The Fourteenth Amendment bars the government from treating similarly-situated persons differently.  For example, in getting permission from the local administrative judge for a future filing, the person designated "vexatious" must show that the filing "has merit."  This is a standard higher than what is necessary for filing a suit in the ordinary case.  And an ordinary citizen would be able to bring a novel case, to change the law.  But the "vexatious litigant" loses the right to bring such a case.

-28-

166.   As another example, under Texas law, all citizens have the right to appeal a judgment issued against themselves; all citizens are entitled to move to change venue, especially by reason of local prejudice; all citizens are entitled to protect their first amendment rights of speech, petition, and association by moving to dismiss strategic actions under the Texas anti-SLAPP statute.

167.   But citizens who are merely *accused* under Chapter 11—who have done no more than bring a suit, a motion, or a Rule 202 proceeding—are arbitrarily shorn of their right to defend themselves by using these same protections that are used by everyone else.

168.   As a violation of equal protection, Chapter 11 is unconstitutional on its face.

169.   Chapter 11 is also unconstitutional as applied to Plaintiffs.

170.   Without intervention from this Court, Plaintiffs are suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

### PRAYER

Plaintiffs pray that the Court will:

171.   Issue a declaratory judgment that sets forth, as a matter of law, that Chapter 11 of the Texas Civil Practice & Remedies Code, in its entirety, is unconstitutional on its face.

172.   If Chapter 11 is not unconstitutional in its entirety, issue the same declaratory judgment individually for each section of Chapter 11 that is unconstitutional on its face.

173.   Issue a declaratory judgment that Chapter 11—in its entirety, or as to particular sections —is unconstitutional as applied to each Plaintiff.

174.   Certify two defendant classes of all Texas court clerks and local administrative judges.

175.   Consistent with the declaratory judgment or judgments, enter a preliminary injunction as

to each plaintiff and a permanent injunction that enjoins Defendant LaVoie, all clerks of

court in Texas, and all local administrative judges in Texas from enforcing Chapter 11

against Plaintiffs and all those similarly situated;

176.   Grant Plaintiffs their costs and attorneys' fees, including under 42 U.S.C. §1988.

177.   Award to Plaintiffs a nominal, symbolic award of $1.00, in recognition of their

inconvenience and trouble.

178.   Grant such other and further relief as the Court determines is just and proper.


Respectfully submitted,

/s/ John W. Vinson                            /s/ Mary Lou Serafine
John W. Vinson                                Mary Louise Serafine (Lead Attorney)
State Bar No. 20590010                        State Bar No. 24048301
John W. Vinson, PLLC                          Mary Louise Serafine, Attorney &
PO Box 301678                                    Counselor at Law
Austin, TX 78703                              3571 Far West Blvd., #3669, Austin, TX
Tel: (512) 926-7380                           Tel: (512) 220-5452
Email: johnvinsonatty@yahoo.com               Email: serafine@mlserafine.com

*Attorneys for Plaintiffs*