IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CHRISTINE REULE, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:22-cv-367-JDK |
| AUSTIN REEVE JACKSON, *et al.*, | § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTIONS TO DISMISS**

Plaintiffs in this case challenge the constitutionality of Chapter 11 of the Texas Civil Practice and Remedies Code, which governs "vexatious litigants." Defendants are state judicial and executive officials authorized to act under Chapter 11.

Defendants move to dismiss the action under Federal Rule of Civil Procedure 12. They argue Plaintiffs lack standing, Defendants are entitled to sovereign and judicial immunity, and abstention doctrines warrant dismissal. Docket Nos. 14, 15. Defendants also argue Plaintiffs fail to state a claim because there is no "right to file frivolous litigation," and other courts have already rejected Plaintiffs' constitutional arguments. Docket No. 14 at 23–31 (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983)). The Court heard oral argument on the motions on May 10, 2023.

As explained below, the Court holds that Plaintiffs do not have standing to sue these Defendants. In particular, Plaintiffs have not identified an injury fairly

1

traceable to, or likely to be redressed by a favorable ruling against, the non-judicial Defendants. And Plaintiffs lack a case or controversy against the remaining judicial Defendant.

Accordingly, the Court lacks subject matter jurisdiction and grants Defendants' motions to dismiss.

### I.

Chapter 11 of the Texas Civil Practice and Remedies Code was enacted in 1997 to restrict frivolous and vexatious litigation. Act of June 17, 1997, 75th Leg., R.S., ch. 86, 1997 Tex. Gen. Laws 2634 (codified at TEX. CIV. PRAC. & REM. CODE §§ 11.001, *et seq.*). Plaintiffs are individuals found to be "vexatious litigants" under Chapter 11. They argue that the statute violates the U.S. Constitution.

### A.

Chapter 11 provides criteria for determining if a plaintiff is a "vexatious litigant" and empowers state courts to prohibit such litigants from filing new lawsuits pro se without permission.

A court may find a plaintiff vexatious if, after notice and a hearing, the defendant shows "there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant" and any one of the following requirements:

> (1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:
>
> > (A) finally determined adversely to the plaintiff;
> >
> > (B) permitted to remain pending at least two years without having been brought to trial or hearing; or

2

>> (C) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure;
>
> (2) after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se, either:
>
>> (A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or
>>
>> (B) the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or
>
> (3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

TEX. CIV. PRAC. & REM. § 11.054.

If a court finds a plaintiff vexatious, the court may "enter an order prohibiting [the plaintiff] from filing, pro se, a new litigation . . . without permission of the appropriate local administrative judge." *Id.* § 11.101(a). The plaintiff may appeal this "prefiling order . . . designating the person a vexatious litigant." *Id.* § 11.101(c). A plaintiff who violates the order is subject to contempt of court. *Id.* § 11.101(b).

The local administrative judge may permit a vexatious litigant to file a new lawsuit pro se "only if it appears to the judge that the litigation: (1) has merit; and (2) has not been filed for the purposes of harassment or delay." *Id.* § 11.102(d).[1] If the judge denies permission, the litigant "may apply for a writ of mandamus with the

---

[1] Local administrative judges are a statutory creation. TEX. GOV'T CODE §§ 74.091–.092. One district judge from each county serves as the local administrative judge. *Id.* § 74.091(a). In counties with two or more district courts, the judges of those courts elect a district judge to serve as the local administrative judge. *Id.* § 74.091(b). In counties with one district court, the judge of that court serves as the local administrative judge. *Id.* § 74.091(c).

3

court of appeals." *Id.* § 11.102(f).  The judge "may make a determination on the request with or without a hearing." *Id.* § 11.102(c).

Chapter 11 also mandates that a "clerk of court may not file a litigation, original proceeding, appeal, or other claim presented, pro se, by a vexatious litigant subject to a prefiling order" unless the litigant has obtained the permission from the local administrative judge.  *Id.* § 11.103(a).

And finally, Chapter 11 requires the Texas Office of Court Administration to "post on the agency's Internet website a list of vexatious litigants subject to prefiling orders under Section 11.101." *Id.* § 11.104(b).  The office may not remove the name of a vexatious litigant from the website unless it "receives a written order from the court that entered the prefiling order or from an appellate court." *Id.* § 11.104(c).

## B.

Plaintiffs are six individuals whom Texas courts have declared vexatious litigants under Chapter 11.  Docket No. 1 ¶¶ 12–17.  Plaintiffs sue under 42 U.S.C. § 1983, claiming Chapter 11 violates the First and Fourteenth Amendments both facially and as applied to them.  *Id.* at 1.  In particular, Plaintiffs contend Chapter 11 is an unlawful prior restraint, denies them due process, violates "equal protection," and is "arbitrary and capricious." *Id.* ¶¶ 122–70.

Defendants are Judge Austin Reeve Jackson, the administrative judge of Smith County, Texas; Penny Clarkston, the District Clerk for Smith County; and Megan LaVoie, the Administrative Director of the Office of Court Administration.  *Id.* ¶¶ 18–26.  Plaintiffs claim these defendants enforce Chapter 11.  *See id.* ¶¶ 18–29.

4

Pursuant to Rule 23, Plaintiffs seek to certify two classes of defendants, one comprised of all Texas local administrative judges, and the other comprised of all district clerks in Texas. Docket No. 30 at 1.

Plaintiffs seek a declaratory judgment stating that Chapter 11 is unconstitutional, and they ask the Court to enjoin LaVoie and the defendant classes "from enforcing Chapter 11 against Plaintiffs and those similarly situated." Docket No. 1 ¶ 175.

## C.

Plaintiffs are represented by Mary Louise Serafine, a vexatious litigant who previously challenged the constitutionality of Chapter 11. On January 8, 2021, a Texas state court found Serafine to be a vexatious litigant based on her multiple lawsuits against former neighbors and the judges presiding over those cases. *Order Dated January 8, 2021*, *Serafine v. Crump*, No. D-1-GN-19-002601 (345th Dist. Ct., Travis Cnty., Tex.); *see also Serafine v. LaVoie*, 2022 WL 229364, at *1–3 (W.D. Tex. Jan. 26, 2022) (detailing Serafine's litigation history). The court entered a prefiling order under Chapter 11 preventing her from filing new pro se litigation.

Serafine challenged the constitutionality of Chapter 11 in the U.S. District Court for the Western District of Texas in a case nearly identical to the one here. *Serafine v. LaVoie*, 2022 WL 229364, at *1–3. In that case, Serafine sued the Travis County local administrative judge and district clerk, LaVoie, Chief Justice Nathan Hecht, Governor Greg Abbott, and Attorney General Ken Paxton. *Id.* at *3. After Serafine voluntarily dismissed Governor Abbott and General Paxton, Magistrate

5

Judge Susan Hightower issued a report recommending dismissal of all remaining defendants. *Id.* at *17.

Twelve days later—and before the District Judge adopted the recommendation—Serafine voluntarily dismissed the case. *Plaintiff's Notice of Dismissal of All Parties*, *Serafine v. LaVoie*, No. 1:20-cv-1249 (W.D. Tex. Feb. 7, 2022), ECF No. 119. At a hearing before this Court, Serafine explained "we did not want Judge Pitman to adopt that recommendation because we thought it was wrong." Hearing Tr. 5/10/2023 at 33:17–19. She further explained, "So we thought [Judge Hightower's] opinion was biased and also erroneous and that she completely misdescribed the law of abstention in the Fifth Circuit," *id.* at 34:6–8, and later stated that the recommendation "was wholly wrong," *id.* at 35:18–19.

## II.

"The first jurisdictional question is whether the plaintiffs have standing" to challenge Chapter 11. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–41 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."). Article III of the U.S. Constitution limits federal courts to deciding only "cases" or "controversies," which ensures that the judiciary "respects the proper—and properly limited—role of the courts in a democratic society." *DaimlerChrysler*, 547 U.S. at 341 (cleaned up); *see also Raines v. Byrd*, 521 U.S. 811, 829 (1997) ("Our regime contemplates a more restricted role

6

for Article III courts . . . 'not some amorphous general supervision of the operations of government.'" (quoting *United States v. Richardson*, 418 U.S. 166, 192 (1974))).

"[A]n essential and unchanging part of the case-or-controversy requirement of Article III" is that the plaintiff has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The standing requirement is not subject to waiver and requires strict compliance. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). Article III standing requires a plaintiff to show: (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (5th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Here, Plaintiffs do not have standing. As an initial matter, the Court assumes that Plaintiffs alleged an injury—the inability to file meritorious "litigation and to access the courts . . . without the [local administrative judge's] permission." Hearing Tr. 5/10/2023 at 17:23–18:1; Docket No. 1 ¶ 119 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Although Plaintiffs do not identify any meritorious litigation blocked by an administrative judge—and in fact, one Plaintiff received permission to file a name-change petition, Hearing Tr. 5/10/2023 at 18:2–4—Defendants do not dispute that Plaintiffs have identified a cognizable injury for Article III purposes.

7

The problem for Plaintiffs, however, is that they have not satisfied Article III's remaining requirements for standing. *Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) ("If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit.").

The Court addresses this problem with each Defendant in turn.

### A.

First, Megan LaVoie, the Administrative Director of Court Administration. LaVoie's sole duty under Chapter 11 is to compile the list of vexatious litigants subject to a prefiling order for publication on her agency's website. *See* CIV. PRAC. & REM. § 11.104(b). LaVoie does not declare a litigant vexatious, issue prefiling orders, or decide whether vexatious litigants may file new lawsuits. *See id.* Nor may LaVoie remove a litigant from the vexatious-litigant list without a court order. *Id.* § 11.104(c).

Given LaVoie's limited role under Chapter 11, Plaintiffs cannot show that their claimed injury is "fairly traceable" to LaVoie or is likely to be "redressed by a favorable decision" against her. *El Paso Cnty.*, 982 F.3d at 336. "Standing requires a 'causal connection between the injury and the conduct complained of.'" *Cameron Cnty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 623 (5th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). And, here, Plaintiffs' claimed injury is the inability to file a new pro se lawsuit without the permission of a local administrative judge—which has nothing to do with LaVoie's publishing a list of vexatious litigants. *See id.* (holding causation "is lacking where 'the challenged action of the defendant [is] . . . the result

8

of the independent action of some third party not before the court."); *Serafine v. LaVoie*, 2022 WL 229364, at *10 (dismissing LaVoie for lack of causation). Rather, the restriction on filing new lawsuits results from prefiling orders issued by various judges. *See* § 11.101(a).

Plaintiffs claim that if LaVoie "did not create and update the list, . . . Chapter 11 would be of no effect." Docket No. 1 ¶ 25. Not so. Even without LaVoie's list, Plaintiffs would be subject to prefiling orders prohibiting them from filing new lawsuits pro se without permission. *See* § 11.101(a). An order against LaVoie in this case would therefore not give Plaintiffs the relief they want. *See, e.g.*, *El Paso Cnty.*, 982 F.3d at 343 (plaintiff lacks standing where an order granting the requested relief "would not rescind," and "accordingly would not redress," the alleged harm); *Stewart v. Wells*, 2020 WL 3146866, at *3 (N.D. Tex. May 26) (holding that plaintiff challenging the constitutionality of the Texas Family Code's "best interest of child" standard lacked standing to sue state officials where "[n]one of the defendants have the authority to change the statute or affect the way in which the courts apply it"), *report and recommendation adopted*, 2020 WL 3129645 (N.D. Tex. June 12, 2020).

Accordingly, Plaintiffs do not have standing to sue LaVoie. *See, e.g.*, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (dismissing Governor Abbott for lack of causation where he had no power to determine who qualified for mail-in voting); *Serafine v. LaVoie*, 2022 WL 229364, at *10.

B.

A similar analysis applies to Penny Clarkston, the District Clerk for Smith County. Chapter 11 prohibits Clarkston—and all district clerks in Texas—from filing new pro se litigation by vexatious litigants subject to a prefiling order "unless the litigant obtains an order from the appropriate local administrative judge." § 11.103(a). Like LaVoie, the clerks do not declare litigants vexatious, issue prefiling orders, or decide whether vexatious litigants may file new lawsuits. *See id.*

Thus, as with LaVoie, Plaintiffs cannot show that their claimed injury is "fairly traceable" to Clarkston's conduct or is likely to be "redressed by a favorable decision" against her. *El Paso Cnty.*, 982 F.3d at 336; *Serafine v. LaVoie*, 2022 WL 229364, at *13 (dismissing Travis County district clerk for lack of causation and redressability). Plaintiffs argue that an injunction against Clarkston and the putative class of clerks would stop the rejection of their filings, fulfilling the redressability requirement. Docket No. 21 at 9–10. But Plaintiffs would still be subject to prefiling orders prohibiting them from filing new pro se lawsuits without permission. § 11.101(a); *see also, e.g., Reule v. Chism*, No. 18-1817-C, at *2 (241st Dist. Ct., Smith County, Tex. May 21, 2019) (imposing "prohibition" on named Plaintiff Christine Reule from "filing additional litigation"). Plaintiffs concede they do not "seek[] to appeal and overturn the vexatiousness orders against them." *See* Docket No. 21 at 14. Accordingly, an injunction against Clarkston would not "serve . . . to eliminate any effects of" the conduct giving rise to their injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998); *see also El Paso Cnty.*, 982

F.3d at 343; *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 881 (W.D. Tex. 2008), *as amended* (May 22, 2009) ("[Plaintiff] does not ask the Court to command the State Defendants to conduct consistency review. The [plaintiff's] requested relief therefore does not lead to a reasonable inference that the injury of deprivation of consistency review will be removed . . . ."); *Cherry v. F.C.C.*, 641 F.3d 494, 498 (D.C. Cir. 2011) ("[T]he relief that this court might give [plaintiff] would not remedy the injuries alleged, because this court has no authority over Zwirn's foreclosure action or the New York court's appointment of a receiver."); *Cnty. of Del. v. Dep't of Transp.*, 554 F.3d 143, 150 (D.C. Cir. 2009) (finding no redressability where "airspace redesigns" responsible for plaintiff's harm would remain in place even if the court vacated defendant's action).

To be sure, an injunction against Clarkston would allow Plaintiffs' new suits to be docketed—for a moment. But until Plaintiffs received the administrative judge's permission, they would be "subject to contempt of court" and their suits would be immediately dismissed. § 11.101(b); § 11.1035(a)–(b) (directing courts to "immediately stay" and "dismiss" any litigation filed by vexatious litigants in violation of a prefiling order). Indeed, Texas courts routinely dismiss cases filed by vexatious litigants who, often by clerk error, momentarily succeed in filing a new lawsuit. *Nunu v. Risk*, 612 S.W.3d 645, 652 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).[2]

---

[2] *See also, e.g.*, *Ratcliff v. Jenkins & Young PC*, 2022 WL 17168389, at *1 (Tex. App.—Amarillo Nov. 22, 2022, no pet.); *Reeves v. Cent. Hous. Nissan*, 617 S.W.3d 676, 678 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Leonard v. Paxton*, 2020 WL 1814614, at *2 (Tex. App.—Austin Apr. 10, 2020,

11

Plaintiffs therefore lack standing to sue Clarkston.

## C.

This leaves Local Administrative Judge Austin Reeve Jackson. The problem with suing Judge Jackson, however, is that "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)); *see also Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003). Thus, a judge acting in an "adjudicative capacity . . . is not a proper party in a section 1983 action challenging the constitutionality of a state statute." *Bauer*, 341 F.3d at 359; *see also Whole Woman's Health*, 142 S. Ct. at 532–33. This is so because "judges do not have a sufficiently personal stake in the outcome of the controversy as to assure that concrete adverseness.'" *Bauer*, 341 F.3d at 359 (cleaned up).

And here, Judge Jackson is acting in an adjudicatory capacity when he considers whether to permit a new lawsuit from a vexatious litigant. Under Chapter 11, Judge Jackson "may grant permission" "only if it appears to the judge that the litigation (1) has merit; and (2) has not been filed for the purposes of harassment or delay." § 11.102(d). Evaluating the merit and purpose of a lawsuit under these circumstances is a quintessential adjudicatory function. *Bauer*, 341 F.3d

---

no pet.); *Moody v. Success Holding, LLC*, 2018 WL 650274, at *2 (Tex. App.—Houston [1st Dist.] Feb. 1, 2018, no pet.); *Barnes v. Donihoo*, 2017 WL 6062296, at *2 (Tex. App.—Texarkana Dec. 8, 2017, no pet.); *Serrano v. Lone Star Title Co.*, 2016 WL 155888, at *1 (Tex. App.—El Paso Jan. 13, 2016, no pet.).

at 360 (holding that judge acted in adjudicatory capacity when determining probable cause to grant guardian ad litem applications); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 199 (3d Cir. 2000) (same where judge considered both "sufficient facts" and "good reason" to grant requests for commitment to substance-abuse treatment); *Lindke v. Tomlinson*, 31 F.4th 487, 493 (6th Cir. 2022) (same where judge determined "reasonable cause" to grant request for domestic protective order). A local administrative judge proceeding under Chapter 11, moreover, may make this determination "with or without a hearing" and "may condition permission on the furnishing of security for the benefit of the defendant." § 11.102(c), (d). If the judge denies the request, the vexatious litigant may apply for a writ of mandamus. § 11.102(f).

Courts have held that judges conducting similar proceedings are acting in an adjudicatory capacity. *Bauer*, 341 F.3d at 360–61; *In re Justs. of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.) (holding that judges acted in adjudicatory capacity when presiding over disbarment proceedings after an attorney's failure to pay bar-membership dues); *Campaign for S. Equal. v. Miss. Dep't of Hum. Servs.*, 175 F. Supp. 3d 691, 699 (S.D. Miss. 2016) (same for judges reviewing adoption petitions); *Cerigny v. Cappadora*, 2018 WL 11446157, at *1 (E.D. La. Aug. 3, 2018) (same for eviction proceedings); *Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1109 (N.D. Ill. 2022) (same for name-change petitions). Indeed, the procedural safeguards and limitations provided by Chapter 11 highlight the adjudicatory nature of the proceeding. *Bauer*, 341 F.3d at 360–61 ("[J]udicial determinations pursuant to [the guardian ad litem

13

statute] are . . . clearly within a judge's adjudicatory capacity, as this statute requires notice and a hearing, among other safeguards and limitations."); *cf. In re Justs. of Sup. Ct. of P.R.*, 695 F.2d at 23 (suggesting that judges act within their adjudicatory capacity when they act pursuant to state statutes as opposed to court rules).

Accordingly, no "case or controversy" exists between "adverse litigants," and Judge Jackson must be dismissed. *Whole Woman's Health*, 142 S. Ct. at 532.

\* \* \*

Plaintiffs repeatedly cite *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004), which permitted a plaintiff challenging California's vexatious litigant statute to sue defendants acting similarly to Defendants here. But the court in *Wolfe* failed to address the causation, redressability, or case-and-controversy problems that hamstring Plaintiffs' suit. The Court finds the opinion unpersuasive.

Accordingly, the Court **GRANTS** Defendants' motions to dismiss. Docket Nos. 14, 15. Because the Plaintiffs do not have standing, the Court need not address Defendants' alternative arguments for dismissal. *Smiley v. Oxford Cap., LLC*, 100 F. App'x 970, 974 (5th Cir. 2004).

Further, the Court **DENIES as moot** Plaintiffs' motion for class certification. Docket No. 30; *see Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321–22 (5th Cir. 2002) ("Because this suit does not present a justiciable case or controversy under Article III, we do not reach the class certification question and intimate no view on its merits."); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class

14

representative[s] lacks standing, then there is no Article III suit to begin with—class certification or otherwise.).

So **ORDERED** and **SIGNED** this **30th** day of **May, 2023.**

*[signature]*
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE